Judge Underwood
delivered the opinion of the Court.
John Bowman instituted an action of ejectment in the Henry circuit court, which was removed by change of the venue to the Franklin circuit, in which a recovery was had against Webb, Dunn and Perry. Commissioners were appointed in pursuance of the occupying claimant acts,, and upon their report, Bowman elected to make the tenants in possession pay for the land; the improvements having exceeded three-fourths the value of the land, estimating it in its natural state. At the April term, 1820, of the Franklin circuit court, the record states, that the parties ,came by their attorneys, and thereupon Bowman made his election to release his title, and thereupon executed deeds of release to the occupants respectively, and also bonds with Jesse Smith, his security, conditioned as required by the said act, and the said occupants respectively entered into bond and security to pay to said Bowman the assessed value, of their respective tracts, as unimproved land.
*71 The deeds of release and bonds conditioned to re* •fund, in case the land should be taken by paramount claims, executed by Bowman are exhibited, but the bonds executed to Bowman, by the occupants, for valuation of the lands recovered, are not to be found in the clerk’s office of the Franklin circuit court. So that Bowman was unable to obtain executions thereon, when the money for the land became due.
Under this state of things, Bowman filed his bill in the Henry circuit court, against Webb, Dunn and Perry, stating the sums they were respectively to pay for the lands recovered of them by the judgment in the action of ejectment, and charging that Perry was surety for Webb, and Webb was surety'for Perry and Dunn, that Webb had purchased Dunn’s land, and bound himself to pay Bowman therefor the sum which Dunn, under the report of the commissioners, had to-pay ; that Dunn was a non-resident, and that the clerk had informed him, Bowman, that the defendants, instead of executing the bonds as required by the court, and as stated in the order of court, had only signed blank pieces of paper, which had never been filled up, and that the defendants, or some of them, had called at the clerk’s office and withdrawn the blanks thus signed, which the clerk was requested to fill up, conformably to the order of court, at the time they were signed by the parties. Wherefore, the complainant prayed for a decree to enforce the payment of the several sums due him for the land relinquished by him, and that the land might be sold to pay the same, and for general relief.
The defendants filed a demurrer to the bill, which was joined, but which does not appear ever to have been disposed of by the court. At the term next after the demurrer was filed, the defendant, Webb, filed his answer. He admits most of the material allegations of the bill. He states that he withdrew the blanks from the clerk’s office which were signed, and designed to be filled up as bonds for the complainant, because upon inquiry he could not find the deeds relinquishing the complainant’s title, and the refunding bonds, which it was his duty, under the statute to execute; and he insists that no decree ought to be rendered against him, because Carneal had re *72 covered since the complainant,a part of the same land; and because there were outstanding, paramount titles, to other portions of the land,in Crawford and Moore. The complainant, in a replication to the ánswer rf Webb, denies the superiority of Crawford’s title, and states that he had purchased in the titles of Carneal and Moore.
The court on hearing, decreed against Dunn $250, against Webb, $501 50, and against Perry, $585, •with interest on each sum from (he first of April, 1820, and authorized executions to issue against the parties respectively, for the sums decreed, and directed that if the money was not collected or voluntarily paid, before the next term of the court, that the tenement purchased by the defendant who' might fail to make payment, or so much as was necessary, should be sold by the sheriff of the county, to raise the money. From this decree Webb and Perry have prosecuted an appeal.
It is contended that the Plenty circuit court had no jurisdiction of the cause; that the complainant sued parties jointly, who could not properly be united, and that the court erred in the nature and extent of its decree. The determination of these points will, we think, be clear by considering the nature of the injury which the complainant had sustained. ■ According to the record, the defendants in the action of ejectment, had executed bonds with surety, to the complainant, for the sums at which the lands recovered from them respectively were valued. The statute relating to the rights and duties of occupants, was fully complied with. The record upon the subject is conclusive between the parties, and estops them, so that neither can say that the bonds were not fully and properly executed by the defendants, for the payment of the valuation of the lands. If these bonds had remained in the clerk’s oifice, or could be found there, the remedy of the complainant would have been complete at law, by suing out executions upon them as the bonds reached maturity. For the statute expressly imparts to them the force of judgments, and authorizes executions to issue upon them.
slaiulory bonds, having force of judg. stroyed, may be set up by tions.° Must be a^annex-tingup'sfaiu-lory bond as in cases of
But if these bonds, through fraud or accident, have Been taken from the clerk’s office, or destroyed, so that executions cannot be issued upon them, and thereby the remedy at law has been rendered unavailing, then we are of opinion it would be proper to resort to a court of chancery, for the purpose of setting up the lost or destroyed bond.
We perceive no reason why a replevin bond or other statutory bond, having the force of a judgment, shall not be setup when lost or destroyed, by the chancellor, precisely as any other obligation would be. it seems to us, there is as much necessity for the interposition of the chancellor in the one case as the other, and we think the proceedings should be alike in respect to the loss of each description of bond. Under this view, it is manifest that the complainant has omitted to do the first thing requisite to give the chancellor jurisdiction in cases like his, and that is to make oath that the bond which he desires to have set up- is lost or destroyed, so that it may be seen on the filing of the bill, that the remedy at law is inadequate. The objection is fatal to the proceedings and decree against Dunn, who is only constructively before the court, by order of publication. In respect to him, it was the duty of the court, ex officio, to see that the case presented itself within the jurisdiction ofthe court. But as it regards the other defendants, we are of opinion that the demurrer and answer of Webb, by admitting that the bonds were withdrawn from the office by Webb, and thereby acknowledging a state of case in which it was proper for a court oF equity to interpose, superseded the necessity of making the failure, of the complainant to file an affidavit with his bill, a complete barrier to the jurisdiction of the court, in like manner as a demurrer to a plea, which the law requires slyould he sworn to, will supersede the necessity of the oath to it.
But there is another ground upon which we are of opinion the whole of the defendants might well object to the proceeding Against them, and that is the attempt to unite them all as defendants in the same bill. That they were correctly united as defendants in the action of ejectment, we do not question: but *74 when judgment was rendered and the commissioners had valued their separate tenements, and they had executed separate bonds for the value of each, and rer linquisbments of the title by the successful party had been executed to them separately, we think these things under the statute, so operate as to effect a sale on the part of the successful claimant, to each tenant separately and distinctly, as.much so as if the successful’claimant had sold the distinct tenements recovered to different persons, other than the defendants in the ejectment. Had this been the case, and the complainant had lost all his bonds, could he, by one suit in chancery have brought all the different ob-ligors before the court and obtained separate decrees, setting up his bonds against each? As much as it may be desired to prevent a multiplicity of actions, we would not tolerate such a proceeding, because'of the inextricable confusion to which it might lead. In this case, from the statements of the bill it appears, that the rights of the parlies, defendants were ‘distinct and in no way connected, so as to' make the whole of them necessary defendants in litigating the liability of one of the purchasers. In I. Chitty, 8, i t1 ■is said: “Atlaw as well as in equity, the courts will not take cognizance of distinct and separate claims or liabilities,of different persons in one suit, though standing in the same relative situation.” See also Richardson, vs. McKinson, &c., Littell’s Select Cases, 320. This error might have been reached by the demurrer, and. upon that, judgment should have been given for the defendants. I. Chitty, 3.
'Neither chan-cellar, nor common law judge, will take cognizance of distinct'and separate claims, or liabilities of different persons in one ■ suit, though - standing in same relative • situation.
The bill does, not proceed against the defendants with the direct object avowed of setting up lost or destroyed, or purloined bonds, although we are dis-. posed to think the allegations of the bill might be -sufficient to accomplish that object, but for the objections already taken,, ft rather claims a lien on the land conveyed to the several occupants, and proceeds with a view to enforce that lien, and to collect /the money by a decree operating in rerru. If the liens claimed were connected, yet we should object .to the proceedings, as we would if A, mortgagee, .holding separate mortgages upon B, C, & E, were, to áttempfto foreclose the whole by one suit. But we *75 do not concede that the complainant had liens on the several parcels of land relinquished to secure the pay-< ment of the valuations thereof. On,the contrary, we are of opinion he had no such liens. The successful claimant, where he elects to part with his title, under the statute, receives in lieu of it bond and security, After giving this, if the occupant sells the land, his vendee, with notice that the bond was unpaid; would hold the land, although principal and surety should Both prove insolvent. This risk the successful claimant assumes upon himself, by agreeing to convey and accepting the bond for the valuation. We are therefore of opinion that the facts alleged were not sufficient to shew any lien on the land, and that so-much of the decree as directs a sale thereof is erroneous. It was certainly useless, if the occupants had made no transfers of the land conveyed to them by the complainant: for it was then subject to executions which might issue for the money. Ifby the decree it was intended to reach the land in the hands of vendees, it was illegal. It was shewn that Biinn had parted with his portion of the land; and that Webb held it. The land is not liable in hands, although Webb may be proceeded against Dunn is a non-resident) in a court of chancery; yet the bdsis upon which the jurisdiction must rest- and his1 liability be fixed, is entirely different from that of lien attached to the land.
af. ter receiving bond and se-^ant^or" Valus o’flancf,-under statute, bas “°lien Undjorpayment of bond, And after giv-security, if occupant sell land, his ^oticefthat*1 bond was unpaid, would thou^h^'n-* cipafanT " proved
It is insisted that no court other than the F.rankliti. circuit’court, could afford redress in-this ease to the complainant, and it is suggested in argument, that the proper remedy there would bé a judgment against1. the occupants, respectively, for the amount of' the valuation of their-several portions of the land1. We think that court could not now render any such judg-1 ment. It is only upon the failure of -the occupant to-give bond and security for the estimated value ofithe land, that the court is authorized by the statute to render judgment therefor. - Bond haying- been given ui this case-as is conclusively proved by the record;nothing remains now to be done but to enforce it. As-that cannot be done by execution, -because it is misplaced, lost: or destroyed, the proper remedy is a-chancery proceeding to set up the lost bond.
bifnn chan-eery, to set \ up and en-executed'b* ¿ccupant, to successful claimant, not transitory.
Successful claimant sur* venders land to tenant, & bondU with*3 security, to refund, under occupant pant must pay for the land, and bond,Unless insolveney be alleged.
Is this remedy local or transitory ? The bonds e&< ecuted to the complainant belonged' to the Franklin circuit court. They ought to have been kept in the office thereof, as they are made equivalent to judgments hy statute. This we believe has been the invariable practice, although it is not expressly enjoined by the statute, and it seems to result from giv-*n§ *° bonds the effect of judgments, and the necessity of preserving in the office, the foundations upon which executions issue. Nevertheless, we have not [Jeen able to' find any statutory provision, and we know of no common law principle which, m case ot the loss of áuch bonds, will confine the jurisdiction to th® court in whose clerk’s office by construction, they should be deposited. The obligation is personal, and the remedy to enforce it, may be. by action or suit, (although the statute gives an execu fion) in the same manner that a judgment, may be the foundation of another action. In this view, which we believe correct, there is nothing which renders the remedy local, and confines it to the Franklin circuit court. If a judgment be obtained in the Franklin circuit against a man living in Hickman, and before execution, the clerk’s office should be burnt or otherwise destroyed, we do not doubt the propriety óf renewing that judgment in the Fratlklin circuit, by proceedings in conformity with theact of 1803; II. Digest, 1050. Nor will we say that the Franklin circuit court might not, in this instance, afford remedy under that act, regarding the bqnds as judgments; but yet we are unwilling to admit that this is the only remedy, and we see no good objection to seeking it where the. defendant jjjay reside, J
It is contended that the adverse claims relied on in answer Webb, present a bar to any relief in any tribunal. We think otherwise, n© matter what may be the strength of these claims. The occupants are indemnified by the refunding bonds, executed to ^em to return the money in case the land is taken by a paramount, claim. This is all the statute requires of the successful claimant. The consideration upon wWcil the occupant’s liability is based, does not en-tjyely fail, although the land may be recovered of' him a second time. When the successful claimant *77 ¿ives the refunding bond, the occupant must pay for the land and take his remedy upon that bond, unless he can show that such remedy would be unavailing, through insolvency, non-residence, &c. This is not attempted in the present case. Wo have considered it proper to notice this ground assumed by the counsel for the appellants, because it may have effect upon, the futurp conduct of the parties.
Monroe and Talbot, for appellants. ,
From what has been said, the conclusion results, that there was a misjoining of the parties, and error in decreeing the sale of the land, and for these causes the decree is reversed and set aside, and the cause remanded with directions to render a-decree upon the demurrer, dismissing the complainant’s bill without prejudice.
. The appellants must recover their costs.